IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MARK MACKENZIE

    Plaintiff,

v.

UNITED AIRLINES, INC., a Delaware corporation

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Mark MacKenzie ("Captain MacKenzie"), through counsel, alleges as follows:

**INTRODUCTION**

1. Captain MacKenzie is a highly experienced and skilled Airline Transport Pilot with more than 35 years of accident and incident-free flying. He has safely transported millions of passengers within the US and around the world. He has been employed by Defendant United Airlines, Inc. ("United") since March 1992 and has continuously been a Captain at United since August 1998.

2. Because Captain MacKenzie has celiac disease, a recognized disability, he requires reasonable accommodations in the form of equal access to safe meals, specifically gluten-free food.

3. United provides meals and snacks to its pilots as a part of their employment.

4. However, despite notice of Captain MacKenzie's disability and request for accommodations, United has refused to make accommodations and has not only denied Captain MacKenzie's requests for safe food, but also charges him for meals that he cannot eat because of his disability.

5. Defendant's conduct in denying Captain MacKenzie's requests for accommodation was discrimination on the basis of disability in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* Captain MacKenzie seeks declaratory relief, injunctive relief, damages, and reasonable attorneys' fees and costs.

## PARTIES, JURISDICTION, AND VENUE

6. Captain MacKenzie is an Airline Transport Pilot with celiac disease who lives in Boulder County in the state of Colorado and works/flies for United out of Denver International Airport, Denver, Colorado.

7. United is an airline which at last report had more than 103,000 employees. Although United is a Delaware corporation and is headquartered in Chicago, United is authorized to do business and does business in the District of Colorado and is subject to personal jurisdiction in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

9. This court has jurisdiction pursuant 28 U.S.C. §§ 1331 and 1343.

## ADMINISTRATIVE PROCEEDINGS

10. Captain MacKenzie filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about March 29, 2021.

11. The Equal Employment Opportunity Commission issued a right-to-sue letter on May 16, 2024.

**FACTUAL ALLEGATIONS**

12. Captain MacKenzie served on active duty in the United States Air Force before becoming an Airline Transport Pilot. Captain MacKenzie has flown as both a First Officer (F/O) and a Captain for United and worked as an Instructor and an Evaluator for United for more than three decades since March 1992. He is currently a B-737 Captain based out of Denver International Airport, Denver, Colorado.

13. Captain MacKenzie has celiac disease.

14. Celiac disease is an inherited, auto-immune disease affecting approximately 1% of the population. Celiac disease has no cure.

15. The only treatment for celiac disease is to maintain a strict gluten-free diet.

16. Gluten is the name for proteins which are found in wheat, barley, malt, and triticale.

17. When a person with celiac disease consumes gluten, the person's body responds by attacking itself (auto-immune disorder), causing damage to the intestinal walls and setting off a host of symptoms that can cause both short- and long-term illness and injury.

18. For example, ingestion of gluten by an individual with celiac disease can result in vomiting, stomach pain, severe gastrointestinal distress, severe weight loss, anemia, loss of consciousness, neurological symptoms, confusion, exhaustion, persistent rash, and even stroke.

19. In addition to illness that can last from days to months, ingestion of gluten in those with celiac disease has serious long-term physical repercussions. Research confirms that

consumption of gluten by individuals with celiac disease increases risk of muscular dystrophy and significantly increases the risk of some cancers, particularly intestinal cancers. Likewise, a person with celiac disease who ingests gluten is more likely to develop non-Hodgkin's lymphoma.

20. Ingestion of gluten can occur when those who prepare food do not act with the care required causing ingestion of foods with known gluten-containing ingredients or when foods that do not contain gluten come into cross-contact with gluten when prepared using shared kitchen equipment, shared preparation surfaces, or shared utensils.

21. "Gluten friendly" and "gluten-sensitive" meals are not the same as gluten-free meals.

22. Individuals with celiac disease can only consume gluten-free meals.

23. Because of his celiac disease, Captain MacKenzie must consume only gluten-free food.

24. When exposed to gluten, Captain MacKenzie experiences impact on multiple body systems including but not limited to his digestive system. When not on a gluten-free diet, Captain MacKenzie experienced weight loss, malnutrition, anemia and other deficient dietary conditions.

25. If Captain MacKenzie consumes food that is not gluten-free, he experiences substantial impairment to multiple major life activities including eating, thinking, and sleeping.

26. United provides its pilots directly with meals during many flights and with per diems when they are traveling in the course of their employment, including while at work and on layovers (overnight stays).

27. For example, on flights starting before 8 a.m., United provides its pilots with a breakfast.

28. For non-stop flights lasting four hours and fifty-nine minutes or less, United provides its pilots with one meal.

29. For non-stop flights lasting nine hours and fifty-nine minutes or less, United provides its pilots with one meal and one snack.

30. For non-stop flight segments lasting between ten hours and eleven hours and fifty-nine minutes, United provides its pilots with two meals.

31. For non-stop flights lasting between twelve hours and fifteen hours and fifty-nine minutes, United provides pilots with two meals and one snack.

32. For non-stop flights lasting for sixteen hours or more, United provides pilots with three meals.

33. Although United sometimes offers what it calls "gluten sensitive" meals, these meals are not gluten-free.

34. United does not provide gluten-free meals to Captain MacKenzie.

35. As a result, Captain MacKenzie is often without any food that he can eat unless he is able to secure gluten-free food on his own.

36. For instance, on a recent one-day trip from Denver to Roatan, Honduras and back to Denver, with a duty day of eleven hours, United did not provide Captain MacKenzie with anything gluten-free that he could eat.

37. United also does not ensure that Captain MacKenzie has gluten-free meals when he is traveling in order to be repositioned by the airline, but is not actively flying the plane.

38. Sometimes, when meals are provided by United, United charges the cost of that meal directly to the pilot via payroll deductions.

39. In such circumstances, Captain MacKenzie is charged the cost of the meal even if he cannot eat the meal because of his celiac disease.

40. As the result of United's refusal to provide gluten-free meals to Captain MacKenzie, he has been forced to use his own funds to purchase food while other pilots are provided meals that they can eat.

41. During layovers, United provides pilots with per diems to be used at assigned hotels or at nearby restaurants. Often, the assigned hotel does not have gluten-free options or there are no nearby restaurants that offer gluten-free options. Many hotels do not have a mini-fridge in which to store gluten-free food brought from home. None or almost none of the hotel rooms have a kitchen in which to prepare and cook gluten-free food. Captain MacKenzie must spend significant time planning and at additional expense to obtain gluten-free food while at work or while on layovers.

42. Although United maintains a list of approved hotels that includes hotels that do offer gluten-free meal options, United has declined to allow Captain MacKenzie to stay at those hotels.

43. Captain MacKenzie was and is forced to expend his own funds to obtain gluten-free food when he is required to stay at hotels without any gluten-free options.

44. In 2020, Captain MacKenzie notified United that he has celiac disease and that he was struggling to access safe food while at work and while on layovers and that he was being charged for food that he could not eat.

45. Captain MacKenzie requested that when United provides meals to pilots, it provide him with gluten-free meals as a reasonable accommodation.

46. Captain MacKenzie also requested that if pilots are served meal(s) and no gluten-free meals are available, he be reimbursed for the cost of purchasing or providing meals that he could safely consume.

47. With respect to hotels, Captain MacKenzie requested that if a trip involves a layover, and the hotel he would be assigned to had no gluten-free options, that he be permitted to stay at another hotel on United's approved hotel list that did have gluten-free options.

48. Captain MacKenzie requested that, on the occasion where there was no available hotel with gluten-free options on the approved list, he be permitted to stay at another hotel with gluten-free options and be reimbursed for the cost of this stay.

49. In response, United has refused, and continues to refuse, to provide any accommodations to Captain MacKenzie.

50. United admits that it does not provide accommodations for pilots with medically necessary dietary restrictions.

51. United told Captain MacKenzie to eat only the selected parts of provided meals and/or pay for gluten-free meals out of his own resources. However, meals are not properly labeled, and gluten is not generally visible to the naked eye, so selecting only part of a meal does not result in safe gluten-free consumption. Further, eating only a portion of a meal is not sufficient nutrition, and results in less food than is available to other pilots.

52. United also requires Captain MacKenzie to "self-accommodate" by using his per diem to purchase gluten-free meals while pilots without medically necessary dietary restrictions are not required to use their per diem in this manner.

53. Captain MacKenzie's per diem was and is the same amount that is allowed to similarly situated non-disabled employees.

54. Captain MacKenzie's per diem has not been sufficient to procure gluten-free food, which often requires additional charges, such as a delivery charge, because most airline terminals do not provide gluten-free options and assigned hotels do not always offer food that Captain MacKenzie can safely eat.

55. United has continued to refuse to accommodate Captain MacKenzie's disability causing him harm, including hunger, illness, and financial costs that are not borne by pilots without disabilities.

**FIRST CLAIM FOR RELIEF**
**TITLE I OF THE AMERICANS WITH DISABILITIES ACT**

56. The foregoing allegations are realleged and incorporated by reference.

57. Title I of the Americans with Disabilities Act prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

58. Employers are prohibited from "utilizing standards, criteria, or methods of administration" that "have the effect of discrimination on the basis of disability". 42 U.S.C. § 12112(b)(3)(A).

59. Employers are prohibited from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless the employer can demonstrate undue hardship.  42 U.S.C. § 12112(b)(5)(A).

60. Captain MacKenzie at all relevant times has been an individual with a disability because he has substantial impairment to major life activities including eating, thinking, and sleeping when he ingests gluten and because gluten causes significant impact on major bodily functions including but not limited to his digestive system.

61. At all times, Captain MacKenzie has been a qualified individual with a disability because he is a licensed Airline Transport Pilot who is able to perform the essential job functions of his job with reasonable accommodations.

62. At all relevant times, Captain MacKenzie has been employed by United.

63. Captain MacKenzie informed United of his disability and requested reasonable accommodations.

64. United concluded that Captain MacKenzie has a disability and is able to perform the essential functions of the job.

65. United, however, denied and continues to deny Captain MacKenzie any accommodation.

66. United's failure to provide Captain MacKenzie with adequate nutrition, or the means to procure it, while providing such nutrition or means to its non-disabled pilots and crew members, is discrimination against him based on his disability, in violation of the ADA.

67. United's policy of deducting from Captain MacKenzie's pay the cost of meals that he cannot safely eat because of his disability is discrimination in violation of the ADA.

68. United's refusal to reimburse Captain MacKenzie for procuring or providing his own meals when he is unable to eat the meals provided to other pilots is discriminatory in violation of the ADA.

69. United's refusal to allow Captain MacKenzie to stay in approved hotels or other hotels that offer access to gluten-free meals is discrimination in violation of the ADA.

70. United has not engaged in a good-faith effort in the interactive process.

71. As a direct and proximate result of United's failure to accommodate, Captain MacKenzie has suffered damages, including additional expenses to procure gluten-free food, related delivery charges, inability to store, prepare and cook gluten-free food while on layovers, significant inconvenience, loss of the simple enjoyment of eating, loss of health, mental anguish, and apprehension.

72. United's practice of not offering gluten-free meals on flights and not sufficiently compensating pilots for gluten-free meals not only harmed and continues to harm Captain MacKenzie, but also affects significant numbers of other employees.

73. United's employment practices complained of above were done with malice or with reckless indifference to Captain MacKenzie's federally protected rights under the ADA, entitling him to punitive damages.

## DEMAND FOR JUDGMENT

Plaintiff Mark MacKenzie therefore demands judgment in his favor and against Defendant United Airlines, Inc., for

a. A declaratory judgment that the practices complained of herein are unlawful and in violation of the ADA;

b. An injunction requiring United to ensure that Captain MacKenzie is provided the reasonable accommodation of gluten-free meals to the same extent that similarly situated pilots without disabilities are provided meals;

c. An injunction prohibiting United from deducting from Captain MacKenzie's pay the cost of meals that he cannot safely consume;

d. Reimbursement of out-of-pocket expenses incurred as a result of United's discriminatory actions;

e. An award of actual pecuniary damages in amount to be determined at trial;

f. An award of compensatory damages for emotional pain and suffering, loss of enjoyment of life, loss of health, mental anguish, apprehension, inconvenience, and other noneconomic damages;

g. An award of consequential damages;

h. An award of exemplary or punitive damages;

i. An award of nominal damages;

j. An award of reasonable attorneys' fees and costs;

k. An award of pre- and post-judgment interest; and

l. Such other relief as this Court deems proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED: August 12, 2024

*s/ David Lichtenstein*

David Lichtenstein
Rachel E. Ellis
Livelihood Law, LLC
12015 E. 46th Avenue, Suite 240
Denver, CO 80239
Phone: (720) 465-6972
Email: drl@livelihoodlaw.com
         ree@livelihoodlaw.com

*s/ Mary C. Vargas*
Mary C. Vargas
Michael S. Stein
Stein & Vargas, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Phone: (240) 793-3185
Email: mary.vargas@steinvargas.com
         michael.stein@steinvargas.com

*Attorneys for Plaintiff*

12